UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOHN M.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 23-cv-11397<br>Honorable Matthew F. Leitman<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 11, 13)**

## I.   Introduction

Plaintiff John M. appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for supplemental security income (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court **RECOMMENDS** that:

- Plaintiff's motion (ECF No. 11) be **GRANTED**;
- the Commissioner's motion (ECF No. 13) be **DENIED**; and

- the ALJ's decision be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further consideration of the medical opinions.

## II.   Background

### A.  Plaintiff's Background and Disability Application

Born in April 1976, plaintiff was 37 years old at the time of his application in 2013.  ECF No. 6-1, PageID.1364.  Plaintiff had no past relevant work.  *Id.*  He claimed to be disabled from arthritis, depression, anxiety, chronic back pain, and left leg pain.  *Id.*, PageID.110.

This case has a complex history.  The Commissioner denied the application in March 2016, and plaintiff appealed to this court.  *Id.*, PageID.21, 36, 649.  In August 2018, the Honorable Matthew F. Leitman adopted a report and recommendation to remand the case to the Commissioner.  *Id.*, PageID.532-533.  On remand, the ALJ issued an unfavorable decision, but the Appeals Council (AC) remanded for further consideration of treating physician Michael T. Owczarzak, M.D.'s opinion.  *Id.*, PageID.599.

In September 2020, the ALJ issued another unfavorable decision, and the AC denied review.  *Id.*, PageID.427, 438.  Plaintiff appealed the case to this court, and, in November 2021, Judge Leitman entered a stipulated order remanding the case with instructions to "re-evaluate the

medical opinions in the record, including the treating physician opinion." *Id.*, PageID.1401-1405. In its own remand order, the AC noted that the ALJ had evaluated the opinion evidence under the current rules rather than the rules that applied to applications filed before March 27, 2017. *Id.*, PageID.1408-1409. The AC instructed the ALJ to reconsider the treating and non-treating source opinions under the applicable rules. *Id.*

Most recently, the ALJ held a hearing in September 2022, during which plaintiff and a vocational expert (VE) testified. *Id.*, PageID.36. In the decision that followed, the ALJ again found plaintiff not disabled. *Id.*, PageID.1353. The AC denied review, and the ALJ's decision became the final decision of the Commissioner. *Id.*, PageID.1338. Plaintiff timely filed for judicial review. ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial

3

gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, he found that plaintiff had not engaged in substantial gainful activity since the application date. ECF No. 6-1,

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

4

PageID.1355. At the second step, the ALJ found that plaintiff had the severe impairments of degenerative disc disease of the lumbar, thoracic, and cervical spine; degenerative joint disease in the knees, hips, and ankles; chronic obstructive pulmonary disease; carpal tunnel syndrome; obesity; anxiety; and obsessive-compulsive disorder. *Id.* Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.1356-1357.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform sedentary work, with added limitations:

> occasional climbing of ramps and stairs and never climbing ladders ropes scaffolds; frequent balancing; frequent handling, fingering and feeling; must avoid concentrated exposure to vibration, respiratory irritants and hazards such as unprotected heights and dangerous moving machinery; can perform simple routine tasks in work that has only occasional changes in the work setting and involves only occasional interaction with the public.

*Id.*, PageID.1357. At step four, the ALJ found that plaintiff had no past relevant work. *Id.*, PageID.1364. At the final step, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded that he could perform jobs that existed in significant numbers in the national economy, including inspector, sorter, and

5

assembler. *Id.*, PageID.1365. The ALJ thus concluded plaintiff was not disabled. *Id.*

### III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir.

1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff argues that the Court must remand this matter because the ALJ failed to articulate good reasons for declining to give Dr. Owczarzak's opinion controlling weight. ECF No. 11, PageID.1675-1685. The Court agrees and recommends that the ALJ's decision be remanded.

**B.**

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.[2] *Gentry*, 741 F.3d at 723, 727-29; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-43 (6th Cir. 2007). "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the

---

[2] The Court applies the treating physician rule since plaintiff filed his disability application before March 27, 2017. *See Wolfe v. Comm'r of Soc. Sec.*, 16-13620, 2017 WL 6627044, at *7 n.4 (E.D. Mich. Nov. 26, 2017), *adopted*, 2017 WL 6621538 (E.D. Mich. Dec. 28, 2017).

7

supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.*

An ALJ who gives less than controlling weight to a treating physician's opinion must provide "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p). This procedural safeguard permits "meaningful appellate review" and ensures that claimants "understand the disposition of their cases." *Id.* at 242-43 (cleaned up).

In March 2019, Dr. Owczarzak stated that plaintiff could sit for four hours per day, 30 minutes at a time; stand for 30 minutes per day; and walk for 30 minutes per day for half a block. ECF No. 6-1, PageID.924-925. He found that plaintiff could not bend or lift, push, pull, or carry any amount, and that fine finger manipulation would be limited to four hours per day. *Id.* The ALJ accorded this opinion "little weight," finding that the objective evidence, including Dr. Owczarzak's treatment notes, did not support those extreme limitations. *Id.*, PageID.1354.

But the objective evidence showed that plaintiff suffers from significant degenerative changes in his back and lower extremities. He had moderate degenerative disc disease in the lumbar and thoracic spine and mild to moderate degenerative changes in the right knee. *Id.*, PageID.310, 341, 376-377, 946, 1062. There were severe degenerative changes in the left foot and ankle, with loss of the normal bone architecture, narrowing and spurring of the joints, and many large fragments around the joints. *Id.*, PageID.424, 426, 1642. Plaintiff also had advanced degenerative changes in the left hip and knee, with severe tricompartmental joint space narrowing, spurring, and intra-articular bodies. *Id.*, PageID.1306, 1642. Plaintiff's doctors have explained that these degenerative changes are likely weight related. *Id.*, PageID.283, 1104, 1149, 1500-1503. Plaintiff weighs about 400 pounds and has a BMI exceeding 60.0. *See, e.g.*, *id.*, PageID.951, 987, 1144, 1097, 1235, 1497, 1517, 1521, 1543, 1561.

Because of these degenerative changes, plaintiff had chronic pain in his back that radiated into his lower extremities, along with weakness, numbness, and tingling. *See, e.g.*, *id.*, PageID.283, 394, 945, 986, 1061, 1064, 1115, 1273, 1541, 1546. On average, he rates the pain at a 7 to a 9 out of 10. *See, e.g.*, *id.*, PageID.283, 945, 986, 1004, 1061, 1064. Plaintiff had tried narcotic and opioid pain relievers, marijuana, knee and spinal

9

injections, a nerve block, and physical therapy, all of which afforded limited relief. *See, e.g.*, *id.*, PageID.361, 945-946, 950-951, 983-984, 992-993, 996, 1064, 1098, 1150, 1171-1173, 1503, 1554-1556. Although some records from plaintiff's pain management provider state that he was "stable on medications" and that they offered "fair pain relief," he still consistently rated his pain at a 7 to a 9 out of 10. *See, e.g.*, *id.*, PageID.934-936, 945-946, 950-951, 983-984, 992-993, 1322-1323, 1554-1556, 1628-1630. Plaintiff's pain and mobility issues were so severe that he often used a cane, and Dr. Owczarzak recently prescribed him a wheeled walker with a seat. *Id.*, PageID.975, 993, 1150, 1544, 1555.

The ALJ considered this evidence but settled on a less restrictive RFC than Dr. Owczarzak recommended. *Id.*, PageID.1359-1363. The ALJ reasoned that (1) there was no evidence that plaintiff required "surgery or persistent treatment for any one condition," (2) Dr. Owczarzak's treatment notes reflect normal examination findings and stated that plaintiff had no difficulty standing or walking, and (3) no evidence supported a sitting restriction. *Id.*, PageID.1362-1364. These are not good reasons for rejecting Dr. Owczarzak's opinion.

Although plaintiff did not require surgery, one record notes that orthopedic specialists would not perform surgery until plaintiff lost weight.

10

*Id.*, PageID.993. And contrary to the ALJ's statement that plaintiff did not require persistent treatment, he saw pain management specialists routinely for medication management and joint injections. *See, e.g., id.*, PageID.934-936, 945-946, 950-951, 983-984, 992-993, 1322-1323, 1554-1556, 1628-1630.

The ALJ was correct that Dr. Owczarzak's treatment notes often reflect normal findings. *See, e.g., id.*, PageID.1102-1103, 1144, 1156, 1160, 1172-1173, 1223, 1265, 1290, 1502, 1521, 1530, 1634. But those findings often conflicted with other records. For example, in November 2017, plaintiff's pain management provider observed that he walked with an antalgic gait and used a cane. *Id.*, PageID.993. Three days later, Dr. Owczarzak noted no abnormal examination findings and stated that plaintiff had no difficulty walking. *Id.*, PageID.1164.

There are similar discrepancies between other examinations performed close in time. *Compare id.*, PageID.984 *with* PageID.1169; PageID.975 *with* PageID.1182; PageID.954 *with* PageID.1223; PageID.951 *with* PageID.1227; PageID.946 *with* PageID.1255; PageID.943 *with* PageID.1260; PageID.940 *with* PageID.1265; PageID.1560 *with* PageID.1634; PageID.1541 *with* PageID.1564. Dr. Owczarzak also noted normal examination findings and no difficulty walking after plaintiff went to

11

the emergency room for low back pain two days earlier. *Id.*, PageID.1171-1173. And Dr. Owczarzak made the same findings at the appointment when he prescribed plaintiff a walker. *Id.*, PageID.1543-1544. The magistrate judge who issued the earlier report and recommendation questioned the accuracy of Dr. Owczarzak's treatment notes:

> It is unclear whether Plaintiff actually denied problems standing or walking in activities of daily living, or the treating source did not note such problems during the course of the examination. For example, while the same treating source noted no limitations in walking or standing as of September, 2014, records from less than two months later note that a stress test was canceled due to Plaintiff's inability to walk for extended periods.

*Michael v. Comm'r of Soc. Sec.*, No. 17-12376, 2018 WL 5306642, at *8 (E.D. Mich. Aug. 3, 2018). Because the ALJ did not reconcile these contradictory findings, the normal examination findings were not good reason for rejecting Dr. Owczarzak's opinion.

Last, contrary to the ALJ's finding that no evidence supported a sitting restriction, multiple providers noted plaintiff's complaints that prolonged sitting worsens his pain. *See, e.g.*, ECF No. 6-1, PageID.283, 934-936, 939-940, 942-944, 951, 954, 958-959, 963, 966, 970, 974, 978, 992, 995, 1003, 1061, 1064. These records are in addition to the objective evidence that plaintiff suffers from moderate to severe degenerative changes in his spine and lower extremities. The ALJ did not discuss the records in which

12

plaintiff complained of pain from sitting or address Dr. Owczarzak's suggestion that plaintiff may require the option to change positions periodically.

The Commissioner argues that a consultative examination by Michael Geoghgan, D.O., reflects benign findings, consistent with Dr. Owczarzak's treatment notes. ECF No. 13, PageID.1698-1700. Dr. Geoghgan observed that plaintiff's range of motion was intact and full, with a negative straight leg raise, normal grip and fist strength, 5/5 strength throughout but 4/5 strength in his left lower extremity, and intact motor and sensory function. ECF No. 6-1, PageID.394-403. But he also noted that plaintiff walked with a severe left-sided limp and had moderate difficulty getting on and off the exam table and heel-toe walking. *Id.*, PageID.395.

Dr. Geoghgan examined plaintiff in October 2015 and did not have the benefit of reviewing more recent imaging studies showing advanced degenerative changes to the hip, ankle, and foot or mild to moderate degenerative changes in the lumbar and thoracic spine and left knee. *See id.*, PageID.424, 426, 946, 1062, 1306, 1642. Again, the ALJ did not reconcile Dr. Geoghgan's findings against the later records. And as this court previously observed in this case, the fact that "some of the earlier records stand at odds with Plaintiff's allegations of disability does not

13

establish that Plaintiff was not disabled for a period of 12 months or more between the alleged onset date" and the ALJ's September 2022 decision. *Michael*, 2018 WL 5306642, at *8 (cleaned up). Instead, the ALJ must consider whether plaintiff "was disabled for a finite period of time which started and stopped prior to the date of" the ALJ's decision. *Id.* Because of the complex history of this case, the record spans a decade, during which plaintiff's condition might have worsened.

      The Commissioner next contends that, even if the ALJ inadequately evaluated Dr. Owczarzak's opinion, that failure amounts to harmless error. ECF No. 13, PageID.1697-1698. The Commissioner maintains that the opinion was "patently deficient," as Dr. Owczarzak's completed it on a check-box form and was unsupported by any explanation or citation to medical records. *Id.* (citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016)). "Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).[3] Thus, an ALJ's failure to address a treating physician's opinion adequately is not harmless if that opinion is supported by medical records

---

[3] This out-of-circuit case has been cited several times in this district. *See., e.g.*, *Petero v. Colvin*, No. 16-11389, 2017 WL 3923983, at *7 (E.D. Mich. Aug. 14, 2017).

14

generated close in time to the completion of the form. *Lovejoy v. Comm'r of Soc. Sec.*, No. 1:21-CV-00836, 2022 WL 3227364, at *12 (N.D. Ohio Aug. 10, 2022); *Johnson v. Comm'r of Soc. Sec.*, No. 1:20CV156, 2021 WL 1214795, at *4 (N.D. Ohio Mar. 31, 2021).

Dr. Owczarzak sufficiently justified his opinion. The standard check-box Social Security disability form that he completed requested the medical diagnoses that supported the restrictions. ECF No. 6-1, PageID.922. Dr. Owczarzak responded that plaintiff had a severe injury resulting in the placement of a rod in his left upper and lower extremities, osteoarthritis of the knees and right hip, and degenerative disc disease in the lumbar and thoracic spine. *Id.* As described above, imaging studies and other medical records generated close in time to Dr. Owczarzak's opinion support his diagnoses and show that plaintiff suffered from severe pain and mobility issues. Similar notations on check-box forms have been found sufficient to support a medical opinion. *See Groshong v. Colvin*, No. 14-12183, 2015 WL 5032839, at *4 (E.D. Mich. Aug. 12, 2015), *adopted*, 2015 WL 5093555 (E.D. Mich. Aug. 28, 2015).

## C.

Given the long history of the case, plaintiff asks the Court to reverse the ALJ's decision and award benefits. ECF No. 11, PageID.1685-1686.

15

Ordinarily, when an ALJ has committed reversible error, remand for further consideration is favored over an award of benefits unless there is no conflicting evidence about the severity of the claimant's impairments. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934 (6th Cir. 2018); *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). And in *Miller v. Comm'r of Soc. Sec.,* the Sixth Circuit declined to remand for an award of benefits because "the record does not allow [the court] to conclude that the claimant is affirmatively entitled to an award of benefits, *despite the prolonged nature of these proceedings*." 811 F.3d 825, 840 (6th Cir. 2016) (emphasis added). Among other errors, the ALJ had given significant weight to the opinion of a non-examining consultant whose opinion preceded relevant medical assessments. *Id.* at 834. The ALJ gave no indication that he considered the fact that the consultant's opinion rested on an incomplete record, and he focused "on isolated, often stale, portions of the record." *Id.* at 834, 838.

But in *Donahue v. Massanari*, the court remanded the case for an award of benefits because "the Commissioner had two opportunities to deny Plaintiff benefits in a legal fashion-and still failed to do so." 166 F. Supp. 2d 1143, 1148 (E.D. Mich. 2001) (cleaned up). The plaintiff in *Donahue* was approaching 59 years old, his application had been pending

16

for seven years, the court had remanded the case for further consideration three years earlier, and the record had changed little since that initial remand. *Id.* at 1145, 1150. And the record lacked persuasive evidence supporting the Commissioner's position that the plaintiff could perform light work. *Id.* at 1148. Because of those factors, the court remanded the case for an award of benefits. *Id.* at 1150.

Other judges in this district, including the undersigned, have followed *Donahue's* holding. *Yoder v. Comm'r of Soc. Sec.*, No. 10-14941, 2011 WL 6308313, at *7 (E.D. Mich. Dec. 16, 2011) (Tarnow, J.) ("This Court remands this case for an award of benefits because Plaintiff has endured considerable delay and proof of disability is strong and evidence to the contrary is lacking."); *Emmendorfer v. Comm'r of Soc. Sec.*, No. CV 20-10123, 2021 WL 850559, at *5 (E.D. Mich. Feb. 16, 2021), *adopted*, 2021 WL 843144 (E.D. Mich. Mar. 5, 2021) (Stafford, M.J.); *Cassandra R. v. Comm'r of Soc. Sec.*, No. 23-10824, 2024 WL 3274774, at *3 (E.D. Mich. July 2, 2024) (Stafford, M.J.). In *Cassandra R.*, this Court said that it "reads *Miller's* reference to 'the record' as central to its decision to remand for further consideration." 2024 WL 3274774 at *3. A remand for an award of benefits was warranted in *Cassandra R.* because the record had

17

changed little since the earlier remand and the Commissioner cited no evidence that conflicted with the medical opinion at issue. *Id.*

Unlike in *Donahue* and *Cassandra R.*, the record here has changed, as plaintiff has offered more recent medical records. And as discussed above, some of the medical evidence here conflicts. This is not a case in which "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *See Faucher*, 17 F.3d at 176. So, despite the decade-long delay caused by the Commissioner's failure to correct the errors identified earlier by this Court, the record here does not permit a conclusion that plaintiff is entitled to an award of benefits. *Miller*, 811 F.3d at 840.

But this should be the Commissioner's last chance to provide an adequate analysis of Dr. Owczarzak's opinion and plaintiff's RFC.

## IV.  Conclusion

The Court **RECOMMENDS** that plaintiff's motion for summary judgment (ECF No. 11) be **GRANTED**, the Commissioner's motion for summary judgment (ECF No. 13) be **DENIED**, and the ALJ's decision be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further consideration of the medical opinions.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: July 30, 2024

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 30, 2024.

s/Donald Peruski
DONALD PERUSKI
Case Manager